## ANDERSON et al. v. STRUVE et al.
### No. 14635.

Court of Appeal of Louisiana. Orleans.
Feb. 26, 1934.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, and Ben R. Miller, of Baton Rouge, for appellants.

Wm. H. Talbot, of New Orleans, for appellees.

HIGGINS, Judge.

Harry R. Anderson, his wife, and her mother brought this action ex delicto against Mr. and Mrs. William L. Struve and their insurance carrier, in solido, to recover damages for personal injuries and property loss as a result of an automobile collision between Mr. Anderson's five-passenger Master Buick Sedan and the Willys Knight coupé of Mrs. Struve on highway No. 61 at Good Hope, La., on May 15, 1932, about 8:15 a. m.

The charge of negligence against Mrs. Struve is that she was driving on her left or the wrong side of the road going in the direction of Baton Rouge.

Defendants denied liability, averring that Mr. Anderson was operating his car on his left, or wrong side of the road, in the direction of New Orleans, and was solely at fault in causing the accident, and in reconvention Mrs. Struve claimed as damages the cost of repairing her car, and, in the alternative, the defendants pleaded contributory negligence.

There was judgment dismissing the main demand and sustaining the reconventional demand as prayed for. The decree on the reconventional demand, however, was in favor of Mr. Struve instead of Mrs. Struve, an error apparently not discovered until the appeal was lodged in this court. The plaintiffs alone have appealed, but the defendants have answered the appeal and asked that the error be corrected.

The record shows that Mr. Anderson was driving his Buick Sedan from Baton Rouge towards New Orleans on the public highway. His wife was seated next to him and beside her, Mrs. Korman, her mother. In the back seat was a colored man. Mrs. Struve was driving her coupé from New Orleans towards Baton Rouge, with her husband seated beside her.

In the unincorporated town of Good Hope the public thoroughfare consists of an 18-foot black top roadway, with a gravel shoulder of

about 5 feet adjacent to the levee of the Mississippi river or the west side and on the opposite or woods or east side there is a gravel area about 40 feet wide with a series of buildings fronting thereon. The two automobiles met in collision on the black top part of the roadway at a point some distance below Prospect avenue, which is a street that intersects the highway at a right angle.

The occupants of the Buick and three other eyewitnesses testified that the Buick car was being operated on its right side, or levee side of the highway, and the defendants' car on its right or woods side of the highway, with a car in front of it and one following it; that Mrs. Struve, in attempting to pass the car in front of her, drove to her left, but, on discovering the presence of the Buick Sedan, she then tried to drive to the extreme left side of the road, between the foot of the levee and the right side of the Buick; that Mr. Anderson attempted to turn to his right, or towards the levee in order to avoid the collision and at that moment the right front part of the coupé struck the right front side of the Buick, knocking the sedan's right front wheel completely off, damaging its front fender, and then continued on, scraping the right sides of both cars together and stopping about 15 feet in the rear of the Buick, headed toward Baton Rouge, or the direction in which it was going; that the damage to the coupé consisted of a broken right front headlight, right front fender, right front hub cap; right side running board and right rear fender; that the Buick came to rest with its left front wheel about the center of the black top part of the road, its right rear wheel on the black top about 3 feet from the edge of the gravel shoulder on the river side of the road, the right front axle, from which the wheel had been torn, resting on the pavement, the car being headed towards New Orleans and the woods or east side of the road on an angle of about 35 degrees.

Three witnesses who came upon the scene immediately after the accident corroborated the plaintiffs and their witnesses as to the location of the Buick and the Willys Knight cars after the accident and the damage thereto.

The occupants of the coupé, together with one eyewitness, state that the Buick car was being driven by Mr. Anderson on his left, or the woods side of the black top road in the direction of New Orleans; that Mrs. Struve was driving her coupé on her right, or the woods side of the road, toward Baton Rouge; that as the two cars approached each other Mrs. Struve applied her brakes and just before the impact attempted to turn to her left; that the right front part of the coupé struck the right front side of the Buick, knocking the right front wheel off the Buick and damaging the right front fender, which scraped along the right side of the coupé, causing damage to the headlight, fender, wheel, running board, and rear fender, all on the right side thereof; that the two cars came to a stop with the front of the Buick slightly past the rear of the coupé, headed in the respective directions they were going; and that the front of the Buick car was off the black top on the woods side of the road and the rear wheels 1 or 2 feet on the black top. Two witnesses who came upon the scene of the accident immediately thereafter, one of them being a garage employee, who lifted the Buick car up and hauled it to the garage with a wrecking machine, testified that both automobiles were on the woods side of the road after the collision. The defendants and two of their witnesses stated that after the collision Mrs. Struve asked Mr. Anderson why he did not look where he was going and he replied that it was his fault as he was not looking where he was driving. Mr. Anderson admits that Mrs. Struve belligerently accused him of driving on the wrong side of the road, but denied that he stated he was to blame for the accident.

The question presented is one of fact and involves the credibility of the witnesses. While Mr. Anderson did not charge in his petition that Mrs. Struve was running at a fast or unlawful rate of speed, in his testimony he stated that she was driving at a speed of "undoubtedly sixty miles an hour." It is difficult for us to understand how she could have been driving at that rate of speed and have admittedly stopped her car within 15 feet of the rear of the sedan after the accident. It also appears to us, if the heavy Buick car was going 15 miles an hour with its front wheels turning in the direction of the levee when it was struck a crushing blow on the right front side by the Willys Knight coupé, that, under the laws of physics, the front of the Buick car would have been forced in the direction of the levee or its right side of the road, instead of towards its left or woods side of the road as testified by plaintiffs and their witnesses. This is particularly so because the right front wheel was knocked off causing the axle to rest on the ground which would have a tendency, on account of the momentum, to cause the rear of the car to swing to its left, as the left front wheel

was not damaged and could continue to roll, whereas the right front side was stationary. Added to this we have the coupé jamming its way through on the Buick's right side, which also would have prevented the rear of the Buick turning towards its right, or towards the levee. But the plaintiffs and their witnesses all say that the left front wheel of the Buick was about in the center of the black top part of the roadway, with the right rear wheel about 3 feet from the edge of the asphalt on the river side and pointing on an angle of about 35 degrees towards the woods side of the road and in the direction of New Orleans.

We are not convinced that the Willis Knight coupé, which was much lighter than the Buick sedan, running at the very fast rate of speed of 60 miles per hour, could have swerved out of the line of traffic past the center of the highway, and then, being confronted with the sedan, coming in the opposite direction, again change its course suddenly toward the foot of the levee, then go in a straight direction, strike the Buick car, and drag alongside of it, causing the damages complained of, and finally come out to the rear of the Buick on the levee side of the highway, without doing more extensive damages to both cars, or without overturning the lighter car.

Again, Mr. Anderson says that the coupé was approximately 35 feet in front of him at the time that it suddenly swerved to its left and struck his car. The angle at which the two cars would approach each other under those circumstances would certainly have caused the front of the Buick car to strike some part of the right side of the coupé. But it is admitted that the headlights and radiator of the Buick car were not damaged at all.

The observations of the defendants and their witnesses as to how the accident occurred are more readily reconcilable with the physical facts than the version thereof of plaintiffs and their witnesses.

Plaintiffs' learned and able counsel have attacked the testimony of the defendants and their witnesses and have pointed out discrepancies which, it is claimed, affects their credibility. The argument is, to some extent, supported by the facts for there are discrepancies in the testimony, but we believe it sufficient to say that the trial judge, who saw and heard the witnesses, had the opportunity of observing their manner of testifying and their demeanor in court, and he accepted the testimony of the defendants and their witnesses. In any event, after a careful review of the voluminous record, we do not believe that it can be said that the judgment is unresponsive to the evidence, or manifestly erroneous, particularly as the plaintiffs had the burden of establishing their case by a preponderance of the evidence.

In regard to the judgment upon the reconventional demand which defendants seek to correct by an answer to the appeal, the proper remedy has not been resorted to, no appeal having been taken by the plaintiff in reconvention. Chavez v. United Motor Car Company (La. App.) 151 So. 807, and the cases therein cited. Plaintiffs, having appealed, are entitled to have the judgment corrected in so far as it affects them adversely.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from, in so far as the main demand is concerned, be and it is affirmed.

It is further ordered that the judgment in favor of Wm. L. Struve on the reconventional demand be and it is annulled, avoided, and reversed.

Plaintiffs to pay the costs of both courts.

Judgment affirmed in part; reversed in part.